

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG/AL
F.#2011R00006

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 26, 2012

<u>By Hand Delivery and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  <u>United States v. Joseph Collina</u>
            <u>Criminal Docket No. 11-32 (KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for March 5, 2012.  For the reasons set forth below, the government respectfully asks the Court to impose a sentence of incarceration within the advisory Guidelines range of 21 to 27 months.

Background

      On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant with racketeering conspiracy, including as racketeering acts possessing contraband cigarettes, in violation of 18 U.S.C. § 2342(a), and receiving stolen property, in violation of 18 U.S.C. § 2315, as well as related substantive crimes.  (Docket Entry No. 1 ¶¶ 14-17, 21-27.)  On January 20, 2011, the indictment was unsealed and the defendant was arrested.  (Docket Entry No. 7; Presentence Investigation Report ("PSR") ¶ 26.)  On August 5, 2011, the defendant pled guilty, pursuant to a plea agreement, to racketeering conspiracy and allocuted to the two aforementioned racketeering acts.  (Docket Entry No. 40; PSR ¶ 1.)

Discussion

I.  Legal Standard

The Sentencing Guidelines are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005).  However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id.  In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted).  Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the district court] may not presume that the Guidelines range is reasonable.  [The district court] must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

The Probation Department has determined that, if the Court awards a two-level reduction based on a global disposition, the total offense level is 14 and, because the defendant is in Criminal History Category III, the advisory Guidelines range of imprisonment is 21 to 27 months.  (PSR ¶¶ 40-65, 112.)  The defendant agrees with this determination.  (Def.'s Ltr. to Court dated February 20, 2012 ("Def.'s Stg Ltr.") at 1.)  The government is prepared to move for the two-level reduction for a global disposition, and also agrees that the applicable Guidelines range is 21 to 27 months.

II. A Sentence Within the Guidelines Range of
    <u>21 to 27 Months Is Appropriate In This Case</u>

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range of 21 to 27 months is appropriate in this case.

A. <u>The Nature and Circumstances of the Offense</u>

The defendant has been convicted of participating in a racketeering conspiracy with members and associates of the Decavalcante family. As part of the racketeering conspiracy, the defendant possessed contraband cigarettes and stole another person's tax refund checks.

Regarding the contraband cigarettes, the defendant and co-defendant Jerry Balzano possessed approximately 1,400 packs of cigarettes, for a total of 28,000 cigarettes. (PSR ¶¶ 13, 16.) In addition, the defendant was captured on a consensual recording telling a cooperating witness (the "CW") that he and his co-defendant intended to distribute the cigarettes through a corrupt guard who worked in a New Jersey jail.[1] (<u>Id.</u> ¶ 14.)

Regarding the stolen tax refund checks, Collina advised the CW that he had obtained a tax refund check worth $15,000 that was stolen from the mail and that he wanted to cash. (<u>Id.</u> ¶ 17.) The defendant and co-defendant Balzano later met the CW, and Balzano gave the CW a check from the United States Treasury in the amount of $15,921 and a check from the State of New York in the amount of $2,007. (<u>Id.</u> ¶¶ 18-19.) Both checks were payable to a victim whose identity has been verified and is set forth in the PSR. (<u>Id.</u> ¶ 19.)

These are serious crimes, particularly when committed as part of a racketeering conspiracy under the auspices of an organized crime family. 18 U.S.C. § 3553(a)(1). First, the Decavalcante family and LCN are dangerous criminal enterprises that use violence, including murder, to further their interests. (PSR ¶¶ 9-11.) The defendant was able to participate in, and expected to profit from, both his possession of contraband cigarettes and his theft of tax refund checks because of his membership in the Decavalcante family. In particular, he expected to sell the cigarettes to a corrupt prison guard and he

---

[1] The defendant and Balzano ultimately explained that the guard had told them that there was too much "heat" at the jail to distribute the cigarettes there.

attempted to sell the tax refund checks to the CW, whom he knew to be an associate of the Colombo family. These are not options that are generally available to people who are not members or associates of organized crime.

Second, the theft of the tax refund checks was a brazen crime that had a clear victim. The checks were clearly intended for a particular person, and the defendant's attempt to deprive the victim of his or her income tax refund is especially callous.

The defendant argues that his culpability as to the contraband cigarettes is minor. In particular, the defendant has submitted a letter in which his wife wrote that he "is not the criminal he is made out to be," that he had trouble finding work after serving a prior term of imprisonment, that he went to Brooklyn to see if he could find work in construction, and that only then did the CW "suck[] him right in" to committing the charged crime of possessing contraband cigarettes. (Docket Entry No. 51 at 1-2.) That argument is belied by the facts.

First, the consensually recorded conversations make clear that the defendant had an entire plan for disposing of the cigarettes, which involved his co-defendant -- also a soldier in the Decavalcante family -- and a corrupt prison guard who would sell the cigarettes to prisoners. (PSR ¶¶ 13-15.) Therefore, it is not possible to characterize this as a crime imposed on the defendant by the CW. The fact is, a person committed to living a law-abiding life would not and could not conceive of such a plan.

Second, it is clear that the other crime to which the defendant allocuted -- the theft of tax refund checks -- was his own idea, which he personally presented to the CW. (PSR ¶ 17.) This undisputed fact also indicates that the defendant was not persuaded or coerced into committing crimes, but rather is dedicated to earning money through crimes and through his membership in the Decavalcante family.

Finally, as charged in Count Three, the defendant and Balzano also purchased stolen televisions and computers from the CW. (PSR ¶ 66.) This fact further indicates that the crimes to which the defendant allocuted cannot be characterized as aberrant.

In light of the foregoing, the government respectfully submits that the nature and circumstances of the offenses warrant a sentence within the advisory Guidelines range.

B. <u>The Defendant's History and Characteristics</u>

The defendant's history and characteristics also support the imposition of a sentence within the Guidelines range. 18 U.S.C. § 3553(a)(1). The defendant is a soldier in the Decavalcante organized crime family of La Cosa Nostra (the "Decavalcante family"), a violent criminal enterprise that engages in crimes including murder, robbery, extortion and obstruction of justice. (Indictment ¶¶ 8, 13.) The defendant did not merely commit the crimes described above; he committed them in his role as a soldier in the Decavalcante family.

Furthermore, in addition to the charged crimes, the defendant also recently committed a crime of violence. In particular, in July 2010, he told the CW that he had attempted to extort the owner of a residential property who was planning to evict two of the defendant's relatives. The defendant told the CW, in a consensually recorded conversation, that he spoke with the owner to prevent the eviction. When the defendant learned that the owner nevertheless served an eviction notice, the defendant said to the CW, "I'm gonna put this guy in the hospital." The defendant told the CW that because the owner shared a last name with a reputed acting captain in the Colombo family, the defendant wanted to ensure that the owner bore no relation to the acting captain before he hurt the owner.

In addition, the defendant committed the crimes of conviction even though he has two prior convictions and only recently completed a term of supervised release. In 2003, the defendant was sentenced to one year of probation based on his conviction for conspiring to travel and use facilities of interstate commerce to bribe a public servant. (PSR ¶ 58.) In that case, the defendant used his influence as a member of organized crime to demand kickbacks relating to a construction project, and attempted to bribe a building inspector in connection with that project. (<u>Id.</u> ¶ 59.) Then, in 2004, the defendant was sentenced to 41 months of imprisonment and three years of supervised release based on his conviction for racketeering conspiracy. (<u>Id.</u> ¶ 61.) His racketeering acts included a "pump and dump" securities fraud conspiracy and the extortion of various construction contractors. (<u>Id.</u> ¶ 62.) His period of supervised released ended on September 10, 2009, only nine months before he began committing the crimes of conviction in the present case. (<u>Id.</u> ¶¶ 13, 17, 61.)

In light of the foregoing, the government respectfully submits that the defendant's history and characteristics warrant a sentence within the advisory Guidelines range.

C.   Other Sentencing Factors

A sentence within the advisory Guidelines range is appropriate to reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant committed serious crimes under the auspices of the Decavalcante family, planned to sell contraband cigarettes through a corrupt prison guard, and participated in the theft of a tax refund check. Furthermore, he committed these crimes shortly after completing a term of supervised release following a prior conviction for racketeering conspiracy. These facts indicate that the defendant's crimes were serious, that he has no respect for the law, and that a term of imprisonment is necessary to provide just punishment.

A sentence within the advisory Guidelines range is also appropriate to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). The defendant's prior convictions and sentences did not deter him from committing other crimes, and in fact he committed additional crimes soon after completing his term of supervised release. Based on the defendant's repeated criminal conduct, a sentence within the Guidelines range is necessary to satisfy the purposes of specific deterrence and protecting the public from the defendant's crimes. In addition, a sentence within the advisory Guidelines range is necessary in order to deter others who, like the defendant, are in a position to choose between obeying the law and committing crimes.

## Conclusion

For all of the foregoing reasons, the government respectfully submits that the Court should to impose a sentence of incarceration within the advisory Guidelines range of 21 to 27 months.

                                      Respectfully submitted,

                                      LORETTA E. LYNCH
                                      United States Attorney

                          By:       /s/
                                      Elizabeth A. Geddes
                                      Allon Lifshitz
                                      Assistant U.S. Attorneys
                                      (718) 254-6430/6164

cc:   Clerk of the Court (KAM) (by ECF)
      Jean D. Barrett, Esq. (by ECF)
      Michelle Espinoza, U.S. Probation Officer (by email)